IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JAMES K. WALKER,

               Plaintiff,

vs.                                            Case No. 17-3176-SAC

DR. HAROLD STOP, et al.,

               Defendants.

**O R D E R**

The court has issued multiple screening orders in this case and ordered a Martinez report. This case is again before the court to screen plaintiff's third amended complaint (TAC) in light of the Martinez report and plaintiff's response to a show cause order. The TAC makes allegations regarding plaintiff's incarceration at the Sedgwick County Adult Detention Facility (SCADF). Most of plaintiff's claims concern a painful skin condition which plaintiff allegedly has suffered.

I. The TAC

Plaintiff names the following persons as defendants in the TAC: Dr. Harold Stop, a doctor at SCADF; Dr. Audrey Griffin, a doctor at SCADF; Dr. Travis, a doctor at SCADF; Sara LNU, Director of the SCADF Clinic; Alicia LNU, Director of the SCADF Clinic; Dr. Bill, Superintendent of doctors at SCADF Clinic; and Jeff Easter, Sheriff of Sedgwick County. In an attachment to the complaint,

plaintiff also names Lt. Taylor, Lt. Smith, Deputy Padic, Deputy Santos, Deputy Tombs, Deputy Sullentroupe; and Deputy Perceil as defendants. Taylor and Smith are identified as superintendents of SCADF. Padic, Santos, Tombs, Sullentroupe and Perceil are identified as correctional officers assigned to Pod 1 and/or the Clinic.

In Count I plaintiff alleges: "Cruel and unusual punishment, pain and suffering, malpractice, negligence, conspiracy, medical abuse against [a] disabled citizen, prejudice, wrong medicine and treatment, [and] entrapment."

In Count II plaintiff alleges the violation of his constitutional rights under the first, fifth, sixth, eighth and fourteenth amendments because of cruel and unusual punishment, pain and suffering, malpractice and negligence.

In Count III plaintiff alleges that the SCADF Clinic defendants failed to respond properly or at all to plaintiff's serious medical needs. Again, plaintiff alleges pain and suffering, cruel and unusual punishment, negligence, the deprivation of constitutional rights, and entrapment. Plaintiff also alleges prejudice and defamation.

Plaintiff has attached 13 pages of additional allegations which are somewhat repetitive. Plaintiff states that the medical defendants failed to research plaintiff's sensitive skin, blood levels, dvt's and allergic reaction to a change in skin

medication.[1]  Plaintiff broadly claims that he was given the wrong medication, the wrong amounts of medication, and denied medication.

More specifically, plaintiff asserts that he was allowed to go to a skin specialist in Spring 2016.  The specialist prescribed Thera Derm lotion and Triamcinolone Ace cream for redness or rash on his legs.  On June 20, 2017, the SCADF Clinic changed the Thera Derm lotion to Dermadaily.  Plaintiff alleges that he had a bad allergic reaction to Dermadaily.  He developed a rash which spread to his feet, legs, stomach and arms.  Plaintiff went through a grievance process and on August 8, 2017 received two bottles of Thera Derm a month from the Clinic.  Plaintiff alleges that the rash worsened and that his legs were extremely swollen, itchy, discolored and painful.

Although it is somewhat unclear, plaintiff appears to allege that in September 2017, Dr. Stopp gave plaintiff steroid injections which "conflicted" with plaintiff's blood thinning prescription for deep vein thrombosis.  The rash did not improve.  Plaintiff alleges that the skin on the bottom of his feet cracked and bled.  Plaintiff was rushed to the hospital on September 16, 2017.  Plaintiff claims he was forced to leave the hospital against the orders of the hospital's doctors.  Plaintiff asserts that his

---

[1] By "dvt", we assume plaintiff is referring to "deep vein thrombosis."

3

condition did not improve. On October 3, 2017, plaintiff was taken to a skin specialist. Plaintiff claims he had requested to see a specialist in June 2017. Plaintiff was given a new prescription, but there was some delay in receiving it. Plaintiff claims his legs are still discolored and his rash is light, but visible.

Plaintiff seeks monetary and injunctive relief.

## II. Screening standards

The court shall apply the screening standards that the court has applied in a previous screening order in this case. Doc. 9, pp. 2-3. Plaintiff has written the TAC on forms for bringing an action under 42 U.S.C. § 1983 and most of his claims appear to fall under this statute. A plaintiff bringing a § 1983 claim must "allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." Bruner v. Baker, 506 F.3d 1021, 1025–26 (10th Cir.2007) (internal quotation marks omitted).

## III. The show cause order and plaintiff's response

In an order (Doc. No. 23) filed March 9, 2018, the court directed plaintiff to show cause why defendants Taylor, Smith, Padic, Santos, Tombs, Sullentroupe and Perceil should not be dismissed from this action. The court stated that plaintiff had not alleged facts demonstrating that defendants Taylor, Smith, Padic, Santos, Tombs, Sullentroupe or Perceil were personally

4

involved in the alleged denial of proper medical care. The court also found that plaintiff had not alleged facts giving these defendants fair notice of the claims against them.

In plaintiff's response to the show cause order (Doc. No. 24), plaintiff alleges that Lt. Taylor and Lt. Smith were legally responsible for the operation of SCADF and involved in the grievance process. Plaintiff alleges that defendants Padic, Santos, and Tombs were correctional officers who were responsible for the welfare of inmates and witnessed plaintiff's legs and pain and suffering, but did not respond reasonably. Plaintiff further alleges that all the deputies listed in the TAC were involved in the grievance process.

Plaintiff claims that defendant Sullentroupe unnecessarily searched plaintiff on an elevator, abrogated plaintiff's stair restriction, and required plaintiff the next day to use the stairs at the Clinic. Plaintiff asserts that using the stairs was painful for him. The stairs restriction was apparently restored the following day.

Plaintiff claims that defendant Perceil ordered plaintiff to pack his property and exit his cell at 2:30 a.m. because plaintiff's cell was needed. Plaintiff asserts this happened at a time when plaintiff could barely walk.

IV. The court shall dismiss defendants Taylor, Smith, Padic, Santos, Tombs, Sullentroupe and Perceil and dismiss plaintiff's damages claims against defendant Easter.

The court finds that defendants Taylor, Smith, Padic, Santos, Tombs, Sullentroupe or Perceil should be dismissed from this action for the following reasons. Plaintiff is bringing this action pursuant to § 1983 which requires a showing that his rights under the Constitution or federal law have been violated by a person acting under color of state law. Plaintiff alleges cruel and unusual punishment. This is a violation of the eighth amendment rights of persons serving a sentence (Farmer v. Brennan, 511 U.S. 825, 832 (1994)), and a violation of the fourteenth amendment rights of persons in pretrial detention (Ledbetter v. City of Topeka, 318 F.3d 1183, 1188 (10th Cir. 2003)). The court assumes that plaintiff was a pretrial detainee during the events alleged in this case.

Plaintiff's cruel and unusual punishment claims mostly involve his medical care at SCADF. There are two types of constitutional challenges to the medical care of prisoners or detainees. Sealock v. Colorado, 218 F.3d 1205, 1211 (10th Cir. 2000). One type is a claim against a medical professional who fails to treat a serious medical condition. Id. The second type is a claim against a prison official as a "gatekeeper" who prevents a prisoner's access to medical care. Id. Defendants Taylor, Smith, Padic, Santos, Tombs, Sullentroupe or Perceil are not

6

medical professionals. So, the court shall consider whether plaintiff has made sufficient allegations to state a claim against them as gatekeepers.

To succeed upon his constitutional claim, plaintiff must show deliberate indifference to an excessive risk to an inmate's health or safety. See Mata v. Saiz, 427 F.3d 745, 751 (10th Cir. 2005). A gatekeeper may manifest deliberate indifference by intentionally denying or delaying access to medical care. Id. Plaintiff does not allege facts showing that Taylor, Smith, Padic, Santos, Tombs, Sullentroupe or Perceil intentionally denied or delayed plaintiff's access to medical care. The court notes that SCADF's policy (which plaintiff has not denied in his response to the court-ordered Martinez report) is that:

> Medical care is received by submitting/sending an inmate request via the pod kiosk. Inmate requests will be triaged within 24 hours and seen within 48 hours with the exception of weekend and holidays. Medical emergencies should be reported immediately to any deputy. There will be no charge for medical visits deemed an emergency by clinic staff.

Doc. No. 26, pp. 31-32. It is also SCADF's policy, again undenied by plaintiff, that an independent contractor (Core Care Solutions, LLC) provides medical services to inmates. Doc. No. 26, p. 4.

The court finds that plaintiff has failed to allege sufficient facts to show that defendants Taylor, Smith, Padic, Santos, Tombs, Sullentroupe or Perceil wantonly or intentionally denied or delayed plaintiff's access to medical care as supplied by Core

Care Solutions and the kiosk process. Plaintiff merely alleges that these defendants witnessed plaintiff's condition and that they were involved in the grievance process. This falls short of alleging facts showing a delaying or denial of medical care for a serious medical need. Plaintiff does not allege an emergency situation. He does not allege facts showing that by "witnessing" plaintiff's condition, defendants were aware of a substantial risk that a delay in treatment would cause plaintiff to suffer serious harm. See Wilson v. Seiter, 501 U.S. 294, 297 (1991)("allegations of inadvertent failure to provide adequate medical care or of a negligent diagnosis simply fail to establish the requisite culpable state of mind"). Also, being involved in the grievance process, by itself, does not suffice to establish personal participation in a constitutional violation. Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009) (citations omitted).

Finally, plaintiff's allegation that Lt. Taylor and Lt. Smith were legally responsible for the operation of SCADF and for the welfare of the inmates is insufficient to show their participation in a constitutional violation. Under § 1983, government officials are not vicariously liable for their subordinates' actions. Serna v. Colorado Dep't of Corr., 455 F.3d 1146, 1151 (10th Cir. 2006) (internal quotations omitted). "Instead, ... the plaintiff must establish a deliberate, intentional act by the supervisor to violate constitutional rights." Id. (interior quotations

omitted). To "demonstrate an affirmative link between the supervisor and the violation," the plaintiff must satisfy "three related prongs: (1) personal involvement, (2) sufficient causal connection, and (3) culpable state of mind." Dodd v. Richardson, 614 F.3d 1185, 1195 (10th Cir. 2010) (internal citations omitted). Plaintiff's allegations against Lt. Taylor and Lt. Smith fail to plausibly describe any one of these elements. For the same reasons, the court shall dismiss any damages claims against defendant Easter. Defendant Easter shall remain a defendant solely for the purposes of plaintiff's claims for injunctive relief.

   Plaintiff alleges that defendant Sullentroupe once made him use the stairs, which was painful, and that defendant Perceil once ordered him to pack up his cell in the middle of the night when plaintiff could hardly walk. These bare allegations do not describe cruel and unusual conditions of confinement or an intentional or wanton action to inflict unnecessary pain. Plaintiff describes single incidents involving common penological objectives (the administration of inmate movement and cell space within the facility), and there are no alleged facts showing an intent to inflict pain or a reckless disregard of a substantial risk of pain. Thus, plaintiff has failed to allege facts showing that defendant Sullentroupe or Perceil violated the standards against cruel and unusual punishment. See Hall v. Moore, 2015 WL 128056 *5 (N.D.Fla. 1/7/2015)(dismissing eighth amendment claim

9

where plaintiff was required to claim stairs on one occasion); Roblero-Barrios v. Ludeman, 2008 WL 4838726 *9 (D.Minn. 11/5/2008)(plaintiff walking some distance with a sore knee when he did not want to wait for a wheelchair he was forced to share, did not violate the Constitution); see also, Despain v. Uphoff, 264 F.3d 965, 974 (10th Cir. 2001)(length of exposure to conditions is of prime importance in considering an eighth amendment claim).

The court acknowledges that the Constitution protects a pretrial detainee from any punishment, not just cruel and unusual punishment. See Blackmon v. Sutton, 734 F.3d 1237, 1241 (10th Cir. 2013)(discussing Bell v. Wolfish, 441 U.S. 520 (1979)). But, for plaintiff to show he was unconstitutionally punished as a pretrial detainee, he must plausibly allege either an expressed intent to punish or no reasonable relationship to any legitimate governmental objective. Id. Plaintiff has failed to allege facts showing that the actions of Sullentroupe and Perceil were motivated to punish plaintiff or lacked any legitimate governmental objective.[2]

Moreover, a qualified immunity defense shields public officials from damages claims unless their conduct was

---

[2] Plaintiff's claim that defendant Sullentroupe harassed him once on the elevator by making plaintiff turn around and grab the wall while he searched plaintiff, also falls short of describing a constitutional violation. See generally Smith v. Trapp, 2018 WL 587230 *5 (D.Kan. 1/29/2018)("even outrageous verbal conduct and de minimis touching is not objectively serious enough to violate the Eighth Amendment").

10

unreasonable in light of clearly established law.  T.D. v. Patton, 868 F.3d 1209, 1220 (10th Cir. 2017)(quoting Gutierrez v. Cobos, 841 F.3d 895, 899 (10th Cir. 2016)). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Mullenix v. Luna, 136 S.Ct. 305, 308 (2015)(per curiam)(internal quotation marks omitted).  The law must place the question beyond debate to be clearly established.  Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011).  Thus, the "Supreme Court has taken a rigorous approach to requiring prior relevant or controlling precedent that involves factually analogous situations holding similar conduct to be unconstitutional before an officer's claim to qualified immunity can be denied." Gadd v. Campbell, 712 Fed.Appx. 796, 801 (10th Cir. 2017).  The court believes defendants Sullentroupe and Perceil would be entitled to qualified immunity from damages liability upon the facts alleged by plaintiff, because the law was not clearly established that the actions alleged by plaintiff were unreasonable or unlawful.[3]

---

[3] Sua sponte dismissal based on affirmative defenses is proper in those instances when the claim's factual backdrop clearly warrants the defense and it is clear that the plaintiff can allege no set of facts to negate the immunity. Banks v. Geary County Dist. Court, 645 Fed.Appx. 713, 717 (10th Cir. 2016)(interior quotations and citations omitted).

V. <u>The court shall dismiss plaintiff's ADA claim, plaintiff's defamation claim and plaintiff's entrapment claim.</u>

Plaintiff's response to the show cause order mentions the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 <u>et. seq</u>. Although plaintiff did not mention the ADA in the TAC, the court will screen the TAC as if plaintiff were asserting an ADA claim. The court assumes that plaintiff seeks relief under Title II of the ADA which provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Plaintiff, however, does not name a suable "public entity" as a defendant. The individuals named as defendants by plaintiff are not "public entities." <u>Snider v. Yates</u>, 2013 WL 6153239 *4 (D.Kan. 11/21/2013); <u>Jacobson v. Johnson County Community College</u>, 2011 WL 4971422 *3 (D.Kan. 10/19/2011); <u>Rix v. McClure</u>, 2011 WL 166731 *6 (D.Kan. 1/19/2011). Therefore, plaintiff's ADA claim shall be dismissed.

The TAC fails to allege facts showing that any defendant communicated false and derogatory statements which injured plaintiff's reputation. Therefore, the court shall dismiss plaintiff's defamation claim. The TAC also fails to allege facts describing entrapment or stating a claim for relief arising from

12

an entrapment situation. Therefore, plaintiff's entrapment claim shall be dismissed.

VI. <u>The court shall dismiss plaintiff's equal protection claim and all constitutional claims which are not linked to the eighth or fourteenth amendments</u>.

Plaintiff's response to the show cause order also mentions equal protection. Although plaintiff does not mention equal protection in the TAC, the court will screen the TAC as if plaintiff were asserting an equal protection claim. To allege an equal protection violation, plaintiff must state facts indicating that defendants intentionally treated him differently than other similarly situated individuals. See <u>City of Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439 (1985). If plaintiff does not allege that he was treated differently on the basis of class membership, then to proceed upon an equal protection claim as a "class-of-one plaintiff", there must be allegations that others similarly situated in every material respect were intentionally treated differently and that the government's action was irrational and abusive. <u>Haik v. Salt Lake City Corp.</u>, 567 Fed.Appx. 621, 631-32 (10th Cir. 2014); <u>Kan. Penn Gaming, LLC v. Collins</u>, 656 F.3d 1210, 1216 (10th Cir. 2011). Here, plaintiff has failed to allege facts which plausibly demonstrate that plaintiff was treated differently than other similarly situated individuals or that differential treatment was intentionally conducted.

The TAC also mentions the first, fifth and sixth amendments. Doc. No. 21, p. 7. Plaintiff, however, does not allege facts which would establish a violation of these provisions. Therefore, the court shall dismiss any claims that defendants violated plaintiff's first, fifth or sixth amendment rights.

VII. Issuance of waiver of summons

The court shall permit plaintiff's claims under the eighth or fourteenth amendments to go forward against the remaining defendants at this time consistent with this order. The court shall direct the Clerk of the Court to prepare waiver of service forms pursuant to Rule 4(d) of the Federal Rules of Civil Procedure, to be served upon defendants Dr. Harold Stop, Dr. Audrey Griffin, Dr. Travis, Sara LNU, Alicia LNU, Dr. Bill LNU, and Jeff Easter. Plaintiff shall be assessed no costs absent a finding by the court that plaintiff is able to pay such costs. Plaintiff has the primary responsibility to provide sufficient name and address information for the waiver of service forms or for the service of summons and complaint upon a defendant. See Nichols v. Schmidling, 2012 WL 10350 *1 (D.Kan. 1/3/2012); Leek v. Thomas, 2009 WL 2876352 *1 (D.Kan. 9/2/2009). So, plaintiff is warned that if waiver of service forms or summons cannot be served because of the lack of name and address information, and correct address information is not supplied to the Clerk of the Court, ultimately the unserved parties may be dismissed from this action. See FED.R.CIV.P. 4(m).

VIII. Conclusion

The court hereby directs that defendants Taylor, Smith, Padic, Santos, Tombs, Sullentroupe and Perceil be dismissed and that plaintiff's damages claim against defendant Easter be dismissed. The court directs that plaintiff's claims under the Equal Protection Clause, the first amendment, the fifth amendment, the sixth amendment, and the ADA be dismissed. The court shall also dismiss plaintiff's entrapment and defamation claims. Finally, the court directs that the Clerk issue waivers of summons in accordance with section VII of this order.

**IT IS SO ORDERED.**

Dated this 6th day of June, 2018, at Topeka, Kansas.

s/Sam A. Crow_____
Sam A. Crow, U.S. District Senior Judge