# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JAMES K. WALKER,<br><br>*Plaintiff,*<br><br>vs.<br><br>JEFF EASTER, Sheriff of the Sedgwick County Sheriff's Office, in their individual and official capacity; SARA (LNU), Director of the SCADF Clinic, in their individual and official capacity; ALICIA (LNU), Director of Operations at the SCADF Clinic, in their individual and official capacity; DR. HAROLD STOPP, Doctor at the SCADF, in their individual and official capacity; DR. TRAVIS (LNU), Doctor at the SCADF, in their individual and official capacity; DR. BILL (LNU), Doctor at the SCADF, in their individual and official capacity; DR. AUDREY GRIFFIN, Doctor at the SCADF, in their individual and official capacity,<br><br>*Defendants.* | Case No. 17-CV-3176-EFM-KGG |

## MEMORANDUM AND ORDER

This case arises out of the Defendants' alleged failure to provide medical assistance to Plaintiff James K. Walker. Defendants Sara (lnu), Alicia (lnu), Dr. Travis (lnu), Dr. Bill (lnu), and Dr. Audrey Griffin (the "Medical Defendants"[1]) argue that Plaintiff has failed to exhaust his

---

[1] The term "Medical Defendants" may appear somewhat confusing given Dr. Stopp's status as a doctor that provided medical services to Plaintiff. Dr. Stopp has separate legal counsel from the Medical Defendants, and the Defendants have used the term "Medical Defendants" to refer to the five Defendants represented by Sanders, Warren, Russell, & Scheer LLP. Accordingly, for purposes of this Order, the Court will adopt the Defendants' naming conventions.

administrative remedies and has failed to state a claim for which relief can be granted against any of the Medical Defendants. Defendant Dr. Harold Stopp joins in the arguments asserted by the Medical Defendants and does not assert any further arguments in support of his request for dismissal. This matter comes before the Court on the Medical Defendants' Motion to Dismiss (Doc. 42) and Defendant Harold Stopp, D.O.'s Motion to Dismiss (Doc. 44). For the reasons explained below, the Court grants the Medical Defendants' Motion and denies Dr. Stopp's Motion.

## I. Factual and Procedural Background[2]

### A. "Facts" portion of the Third Amended Complaint

The "Facts" portion of the attachment to Plaintiff's Third Amended Complaint alleges that he was allowed to go to a skin specialist in the Spring of 2016, and that the specialist prescribed him Thera Derm lotion and Triamcinolone Ace Cream for the redness and/or rash on Plaintiff's legs. Plaintiff used these creams for approximately one year. On June 20, 2017, the Sedgwick County Adult Detention Facility ("SCADF") Clinic changed Plaintiff's medication from Thera Derm to Dermadaily.

Plaintiff noticed that Dermadaily felt different to the touch, and told the "med. passers, C.O.S and Clinic[3]" that his skin specialist had not prescribed Dermadaily. A "med. passer" told Plaintiff that it was all they had for him and his "order was changed by CSS Pharmacy" from Thera

---

[2] The facts included in this section are as taken from the Third Amended Complaint, unless otherwise noted. Further, the Court only includes those facts relevant to the issues and Defendants remaining in this action. The Court has previously dismissed Plaintiff's claims arising under the Equal Protection Clause, First Amendment, Fifth Amendment, Sixth Amendment, and American with Disabilities Act, dismissed Plaintiff's claims for entrapment, defamation, and for damages against Defendant Sheriff Jeff Easter, and dismissed from this case Defendants (fnu) Taylor, (fnu) Perceil, (fnu) Tombs, (fnu) Sullentroupe, (fnu) Santos, (fnu) Smith, and (fnu) Padic.

[3] Plaintiff does not identify any of these individuals by name.

Derm to Dermadaily. Plaintiff used Dermadaily and had an allergic reaction to it, resulting in a rash. The rash mutated in July 2017 and spread to Plaintiff's feet, legs, stomach, and arms.

Plaintiff grieved the change in medication in August 2017, and was told that he would receive two bottles of Thera Derm per month from the SCADF Clinic. But the prescription never came. Plaintiff refused to use Dermadaily because it caused his rash, and his legs became extremely swollen, keeping him up at night. His skin was also extremely itchy.

In August 2017, Plaintiff's legs turned purple, red, and pink, and swelled very large. In September 2017, Dr. Stopp gave Plaintiff a 25mg dose of a steroid. After no change in Plaintiff's condition for approximately two weeks, Plaintiff received an additional and higher dosage of a steroid (50mg).[4] Plaintiff was taken off of his blood-thinner on September 11, 2017. At some point in time, Dr. Bill (lnu) agreed with Plaintiff that his body "maintains" until the 50mg steroid "is over" and then the rash comes back "with strength." Plaintiff asserts that administering him steroids conflicted with his blood-thinner medication that he takes for his DVT.

Plaintiff alleges that his symptoms continued and worsened. When he walked his feet would crack and bleed and he developed a large hole in his right shin from the swelling and thin blood. He was rushed to the hospital on September 16, 2017, and stayed in the hospital until September 20, 2017, when he was forced back to SCADF against the orders of a hospital doctor. Once he returned to SCADF, Plaintiff was housed at the Clinic. Plaintiff does not identify why he was rushed to the hospital, who was involved in forcing him back to SCADF against doctor's orders, or whether the individuals involved in his return knew that returning him to SCADF contravened doctor's orders.

---

[4] Plaintiff does not specify which Defendant, if any, administered the second dose.

On October 3, 2017, Plaintiff was taken to his skin specialist—though he had been requesting to see his specialist since June 2017.[5] Plaintiff received a prescription for Clobetasol cream, but he did not receive the medication until mid-November 2017. When he did receive it, he received only a small amount in a pill cup, and a "med. passer" told Plaintiff that he would not receive the Clobetasol until it was approved, which would not occur until after the holidays.

Plaintiff's specialist increased the Clobetasol prescription in December 2017 and Plaintiff's skin stopped flaking. On January 8, Plaintiff's specialist put him on an additional ointment, and as of February, Plaintiff's legs were still discolored, and although light, his rash was still visible.[6]

Plaintiff generally asserts that the "SCADF Clinic doctors" failed to respond appropriately to all of his serious medical needs, that doctors failed to research Plaintiff's disability before prescribing medication and medical treatment, and that doctors failed to research Plaintiff's allergic reactions, sensitive skin, blood levels, and DTV. Aside from his brief mentions of Dr. Stopp and Dr. Bill (lnu), Plaintiff does not identify any other Plaintiff in the "Facts" section of his Third Amended Complaint.

**B.      Section of Third Amended Complaint identifying each Defendant**

While Plaintiff's "Facts" section references only two Defendants by name, he also includes a separate section purporting to identify each Defendant, and this section includes general factual

---

[5] While Plaintiff alleges that he had been requesting to see his specialist since June 2017, he does not identify to which Defendants he directed those requests, if any, or who had knowledge of his requests.

[6] Plaintiff's Third Amended Complaint dates the allegations from January and February as occurring in 2017, but this appears to be a typographical error based on the timeline and other allegations contained in the Third Amended Complaint. It appears that Plaintiff intended to allege that these events occurred in January and February of 2018 and not 2017. Even if Plaintiff correctly stated 2017 as the relevant time period, however, this would not affect the Court's determination in this Order.

allegations as to each Defendant. The allegations in this section are repetitive, difficult to follow, and, at times, incoherent.[7]

It appears that this section of the Third Amended Complaint includes allegations that Dr. Stopp, Dr. Travis, Dr. Griffin and Dr. Bill engaged in malpractice by failing to research Plaintiff's disability, allergic reaction, sensitive skin, DVT's and blood levels, and that these actions constitute cruel and unusual punishment. Plaintiff also generally asserts that Dr. Travis, Dr. Griffin, and Dr. Bill give inmates as little medical help as possible. Defendant Alicia (lnu), as the Director of Operations at SCADF, allegedly "caused medical negligence and malpractice" and acted recklessly "while being over the medication and staff" by supporting the practices of the other Defendants, by allowing cruel and unusual punishment, and by allowing Plaintiff to live with pain and suffering, "with ignorance over the medical abuse" of the other Defendants. Defendant Sara (lnu), as Director Manager at SCADF, caused medical negligence and malpractice while being the superintendent over medication and whether an inmate may go to a specialist or hospital. Further, Defendant Sara (lnu) supported the other Defendants and allowed their alleged improper actions.

Plaintiff also appears to allege that all of the Defendants engaged in a conspiracy wherein they acted recklessly while "practicing on Plaintiff" by, at times, failing to provide medical treatment and care, and at other times by providing the wrong medical treatment, the wrong types of medication, and the wrong amounts of medication. Plaintiff also alleges the "improper enforcement of SCADF Clinic physicians medical treatment and medication."

---

[7] The Court interprets Plaintiff's pleadings liberally, despite poor syntax and sentence structure.

Plaintiff seeks injunctive relief and monetary damages against each Defendant. The Medical Defendants filed a motion to dismiss Plaintiff's claims arguing that Plaintiff has failed to state a claim upon which relief can be granted and failed to exhaust his administrative remedies.[8] Dr. Stopp filed a motion to dismiss joining in the Medical Defendants' Motion, but not asserting any additional grounds or argument in favor of dismissal. Plaintiff has not filed a response to either Motion.

## II. Legal Standard

Under Fed. R. Civ. P. 12(b)(6), a party may move for dismissal of "a claim for relief in any pleading" that fails to state a claim upon which relief can be granted. Upon such motion, the Court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"[9] "[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient;" rather, the pleading "must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[10] The Court does not "weigh potential evidence that the parties might present at trial," but assesses whether the complaint "alone is legally sufficient to state a claim for which relief may be granted."[11] In determining whether a claim is facially plausible, the Court must draw on its judicial experience and common sense.[12] All well-pleaded facts are assumed to be true and

---

[8] Plaintiff alleges that he used the prison grievance procedures at SCADF to try to resolve his problems, but that he did not receive any response from a captain.

[9] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[10] *Ridge at Red Hawk*, 493 F.3d at 1177 (emphases in original).

[11] *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quotation omitted).

[12] *Iqbal*, 556 U.S. at 679.

are construed in the light most favorable to the non-moving party.[13] "Although plaintiff need not allege every element of his action in specific detail, he cannot rely on conclusory allegations."[14]

"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."[15] Thus, while the Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf," it will, if it can, "reasonably read the pleadings to state a valid claim" even in the absence of citation to proper legal authority, confusion as to various legal theories, poor syntax or sentence construction, or unfamiliarity with pleading requirements.[16]

### III. Analysis

**A. The Medical Defendants' Motion to Dismiss**

*1. Exhaustion of administrative remedies under 42 U.S.C. § 1997e*

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."[17] When a prisoner fails to present claims through the full administrative remedy process, such claims are subject to dismissal.[18]

---

[13] *Albers v. Bd. of Cty. Comm'rs of Jefferson Cty.*, 771 F.3d 697, 700 (10th Cir. 2014).

[14] *See Hall v. Bellmon*, 935 F.2d 1106, 1113 (10th Cir. 1991) (internal citations omitted).

[15] *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009) (quotation and alteration omitted).

[16] *Id.* (quotations omitted).

[17] 42 U.S.C. § 1997e(a).

[18] *See Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.") (citation omitted).

Defendants' argument on this point proceeds as follows: "Plaintiff has not attached any grievances to his Third Amended Complaint showing that he had completed the grievance procedure at the Sedgwick County Adult Detention Center. Further, in the *Martinez* Report, there were no grievances provided by the County regarding the complaints raised against the Medical Defendants." Therefore, they argue, Plaintiff's claims should be dismissed for failure to exhaust administrative remedies.

In *Jones*, the U.S. Supreme Court addressed the PLRA's pleading requirements as to exhaustion of administrative remedies. It specifically rejected the Sixth Circuit's requirement that prisoners "plead and demonstrate exhaustion in their complaints."[19] Instead, it held "that failure to exhaust is an *affirmative defense* under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."[20] Because the U.S. Supreme Court has made clear that Plaintiff need not plead and demonstrate exhaustion in his Third Amended Complaint, the Court denies Defendants' motion to dismiss based on exhaustion of administrative remedies.[21]

   2.   *Failure to state a claim under Rule 12(b)(6)*

In *Estelle v. Gamble*,[22] the U.S. Supreme Court first recognized claims for deliberate indifference to an inmate's medical needs. It held that "prison officials violate the Eight Amendment's ban on cruel and unusual punishment if their 'deliberate indifference to serious

---

[19] *Id*. at 213.

[20] *Id*. at 216 (emphasis added).

[21] As an affirmative defense, Defendants bear the burden of demonstrating a failure to exhaust. Here, Plaintiff's Third Amended Complaint does not on its face show a failure to exhaust administrative remedies, but instead alleges that he used the grievance procedure to try to resolve his complaints. Dismissal at this stage is improper.

[22] 429 U.S. 97 (1976).

medical needs of prisoners constitutes the unnecessary and wanton infliction of pain.' "[23] The U.S. Supreme Court has adopted a two-prong inquiry for analyzing such claims, including both an objective component and a subjective component.[24] To satisfy the objective component, "the alleged deprivation must be 'sufficiently serious' to constitute a deprivation of constitutional dimension."[25] "A medical need is serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."[26] The Court assumes for purposes of this Motion that Plaintiff has adequately alleged the objective component of his claim. Accordingly, the Court will focus its analysis on whether Plaintiff has adequately pleaded facts sufficient to satisfy the subjective component.

"[U]nder the subjective inquiry, the prison official must have a 'sufficiently culpable state of mind.' "[27] An "inadvertent failure to provide adequate medical care" does not give rise to a claim under 42 U.S.C. § 1983; nor do allegations regarding mere negligence or malpractice give rise to such a claim.[28] "Rather, 'a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.' "[29] The U.S. Supreme Court has "made

---

[23] *Self v. Crum*, 439 F.3d at 1230 (10th Cir. 2006) (quoting *Estelle*, 429 U.S. at 104). The Eighth Amendment's ban on cruel and unusual punishment is made applicable to States through the Fourteenth Amendment. *See Estelle*, 429 U.S. at 102.

[24] *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

[25] *Self*, 439 F.3d at 1230 (quoting *Farmer*, 511 U.S. at 834).

[26] *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996) (quotation marks and quotation omitted). *See also Ajaj v. United States*, 293 F. App'x 575, 579 (10th Cir. 2008).

[27] *Self*, 439 F.3d at 1230-31 (quoting *Farmer*, 511 U.S. at 834).

[28] *Id.* at 1230.

[29] *Id.* (quoting *Estelle*, 429 U.S. at 106).

clear" that "a prison official cannot be liable 'unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' "[30]

In summary, Plaintiff alleges that his medication was changed in June 2017, and that he informed the "med. passers, C.O.S and Clinic" that his skin specialist had not prescribed the new medication. He developed a severe rash and other unpleasant and painful physical symptoms in reaction to the new medication, and although he successfully grieved the medication change in August 2017, he never received his prior prescription. In treating Plaintiff, Dr. Stopp gave Plaintiff a 25mg steroid in September 2017, which conflicted with Plaintiff's blood-thinner medication causing Plaintiff's blood to become "water thin" and resulting in a large hole in his right shin. Plaintiff was taken off the blood-thinner medication on September 11, 2017. Close to two weeks after Plaintiff had been on the 25mg steroid, Plaintiff's steroid treatment was increased to 50mg. Plaintiff was taken to the hospital on September 16, 2017, and stayed there until September 20, 2017, when he was forced against doctor's orders to return to SCADF. On September 22, 2017, Dr. Bill (lnu) agreed with Plaintiff that his body only maintained until the 50mg steroid was "over" and then the "rash comes back with strength." Shortly thereafter, on October 3, 2017, Plaintiff was taken to a skin specialist. Plaintiff, however, did not receive his prescription from the skin specialist until mid-November 2017. Plaintiff visited the skin specialist again in December 2017 and January 2018 and his medications were again modified. As of February 2018, his legs were still discolored and, although light, his rash was still visible.

---

[30] *Id.* at 1231 (quoting *Farmer*, 511 U.S. at 837).

a. Defendants Sara (lnu) and Alicia (lnu)

The Medical Defendants argue that Plaintiff has failed to assert that Defendants Sara (lnu) and Alicia (lnu) personally participated in the alleged deprivation, and instead seeks to hold them liable purely due to their status as supervisors. Thus, Defendant argues, Plaintiff's claims against these Defendants fail.

"Although a supervisor can sometimes incur liability under § 1983 for the unconstitutional acts of subordinate employees, supervisory status alone is insufficient."[31] Indeed, § 1983 "does not authorize liability under a theory of respondeat superior."[32] To hold a supervisor liable for a § 1983 violation, Plaintiff "must show an 'affirmative link' between the supervisor and the constitutional violation."[33] "This requires 'more than a supervisor's mere knowledge of his subordinate's conduct.' Rather, a plaintiff must satisfy 'three elements . . . to establish a successful § 1983 claim against a defendant based on his or her supervisory responsibilities: (1) personal involvement; (2) causation; and (3) state of mind.' "[34]

Here, Plaintiff includes a three-page "Facts" attachment to his Third Amended Complaint that details his alleged inadequate medical care. Neither Defendants' name appears in this section. Rather, the only mention of these Defendants in Plaintiff's Third Amended Complaint appears in the section identifying and listing each Defendant. In that section, Plaintiff alleges that Defendant Sara (lnu) was the superintendent over medication and whether an inmate is allowed to go to a

---

[31] *Peterson v. Creany*, 680 F. App'x 692, 696 (10th Cir. 2017) (citing *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010)).

[32] *Estate of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014) (quotation omitted).

[33] *Id*. (quotation omitted).

[34] *Id.* (quoting *Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760, 767 (10th Cir. 2013) and citing *Dodds*, 614 F.3d at 1195) (alteration in original).

specialist or hospital, and that she "allowed medical abuse." He alleges that Defendant Alicia (lnu) served as the director of operations and allowed Plaintiff to live with pain and suffering, "with ignorance over the medical abuse" Plaintiff suffered.

While Plaintiff identifies Defendant Sara (lnu) as "over medication" and whether "an inmate is allowed to go to a specialist or hospital," he does not allege that Defendant had knowledge of the change in his prescription, knowledge of his request to see a specialist, or knowledge that he was allegedly forced to return to SCADF against a hospital doctor's orders. With regard to Defendant Alicia (lnu), Plaintiff similarly fails to allege knowledge as to any of the relevant events giving rise to his claims, and merely generally alleges that she supported the practices of others "with ignorance" as to the alleged inadequate medical treatment. At no point does Plaintiff allege that these Defendants had personal involvement with Plaintiff's medical care, medication, or any of the events giving rise to Plaintiff's claims, had knowledge of Plaintiff's complaints or medical condition, had promulgated or had responsibility for a policy alleged to have violated Plaintiff's rights, or acted with a culpable state of mind.[35] In short, Plaintiff has failed to allege personal involvement, causation, or the requisite state of mind as to either Defendant.

Further, to the extent Plaintiff alleges each of the Defendants engaged in a conspiracy against him, he has failed to sufficiently plead the existence of a conspiracy. Rather, this allegation constitutes nothing more than an unsupported and conclusory allegation insufficient to state a claim against any of the Defendants. "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders

---

[35] *See Dodds*, 614 F.3d at 1199.

naked assertions devoid of further factual enhancement."[36] No allegations in Plaintiff's Third Amended Complaint support the finding that any of the Defendants entered into a conspiracy to violate his rights.[37]

To the extent Plaintiff seeks to hold Defendants Sara (lnu) or Alicia (lnu) liable solely due to their positions as supervisors/directors at the Clinic and unrelated to their own actions, the law does not allow such claims.[38] To the extent Plaintiff seeks to hold them liable for their personal participation in his medical treatment, he has failed to state a claim against them for which relief can be granted. Accordingly, the Medical Defendants' Motion to Dismiss is granted as to Defendants Sara (lnu) and Alicia (lnu).

           b.        Defendants Dr. Bill (lnu), Dr. Travis (lnu), and Dr. Griffin

The Medical Defendants argue that Plaintiff's Third Amended Complaint fails to include any allegations that Dr. Travis (lnu) and Dr. Griffin were involved in any of Plaintiff's medical treatment, that they were involved in or knew of the pharmacy's actions in sending Plaintiff a different brand of medication, or that they knew of any allergic reaction and disregarded it. The Medical Defendants characterize Plaintiff's claims against Dr. Bill (lnu) as claims based on his

---

[36] *Iqbal*, 556 U.S. at 678 (quotation marks, alteration, and quotation omitted).

[37] *See, e.g.*, *Ankeney v. Zavaras*, 524 F. App'x 454, 459 (10th Cir. 2013) (affirming dismissal where complaint contained conclusory allegations that supervisors created and/or participated in a plan or scheme to deny his constitutional rights); *Sanaah v. Howell*, 384 F. App'x 737, 740 (10th Cir. 2010) (affirming dismissal where there were "only general and conclusory allegations, unsupported by facts"); *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994) (recognizing that "[c]onclusory allegations of conspiracy are insufficient to state a valid § 1983 claim") (quotation omitted).

[38] *Dodds*, 614 F.3d at 1199. *See also Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. . . . a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

status as superintendent and not related to his personal participation in the alleged events giving rise to Plaintiff's claims.

Only two Defendants' names appear in the "Facts" section of Plaintiff's Third Amended Complaint—Dr. Stopp and Dr. Bill (lnu).[39] Plaintiff's mention of Dr. Bill (lnu), however, does not include any allegations of wrongdoing. Rather, Plaintiff alleges that on September 22, 2017, "Dr. Bill agree[d] with Plaintiff [that his] body only maintains until [steroid] 50mg is over then rash comes back with strength." Plaintiff visited a specialist less than two weeks after Dr. Bill (lnu) made this observation. Thus, while Plaintiff's allegations support an inference that Dr. Bill had some level of familiarity with Plaintiff's skin condition as of September 22, 2017, they are insufficient to show that Plaintiff knew of and disregarded a risk to Plaintiff's health or safety. And, as with the other Medical Defendants, Plaintiff has failed to allege facts to show that Dr. Bill (lnu) had any knowledge of Plaintiff's prescription status, medical condition, or complaints prior to September 22, 2017, or that Dr. Bill (lnu) participated in any way or had knowledge of Plaintiff's medical treatment or the status of his medications after he saw a specialist. Further, to the extent Plaintiff seeks to hold Dr. Bill (lnu) liable due to his status as the superintendent doctor at the SCADF Clinic, his allegations still fall short of stating a claim.[40] As with Defendants Sara (lnu) and Alicia (lnu), Defendant has failed to allege facts sufficient to find personal participation in the allegations of wrongdoing, causation, or the requisite state of mind.

---

[39] The Medical Defendants' motion to dismiss does not address the allegations against Dr. Stopp.

[40] Plaintiff alleges that Dr. Bill (lnu) "permitted cruel and unusual punishment" and engaged in a conspiracy with other personnel of the Clinic.

With regard to Dr. Travis (lnu) and Dr. Griffin, Plaintiff's allegations are general and conclusory in nature and insufficient to state a claim upon which relief can be granted.[41] The allegations against each Defendant amount to nothing more than "naked assertions devoid of further factual enhancement." At no point does Plaintiff include any allegations to suggest that these Defendants had the requisite knowledge or state of mind to satisfy the subjective element of his claim.

Plaintiff has failed to allege facts sufficient to show that he would be entitled to relief on his claims against any of the Medical Defendants.[42] He has not alleged facts sufficient to show that any of the Medical Defendants knew "of and disregard[ed] an excessive risk to [Plaintiff's] health or safety."[43] To find that Plaintiff has adequately stated a claim for cruel and unusual punishment based on inadequate medical care, the Court would have to supply additional facts to round out Plaintiff's Third Amended Complaint. While the Court liberally construes Plaintiff's pleadings, it may not supply such additional facts.[44] Accordingly, the Court grants the Medical Defendants' motion to dismiss for failure to state a claim upon which relief can be granted.

---

[41] While Plaintiff repeats the same general allegations against the doctor Defendants, those allegations lack any specificity and, aside from Dr. Stopp, it is unclear which Defendants Plaintiff alleges personally engaged in wrongdoing and which Defendants Plaintiff seeks to hold liable as co-conspirators. *See, e.g.*, *Gray v. Sorrels*, __ F. App'x __, 2018 WL 3654823, at *3 (10th Cir. 2018) (noting that allegation against a group of Defendants that they denied a plaintiff relief for his severe pain for 79 days was "too conclusory to establish personal participation on the part of any one of them").

[42] *See Iqbal*, 556 U.S. at 679 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.") (quotation marks, alteration, and quotation omitted).

[43] *Self*, 439 F.3d at 1231.

[44] *See Smith*, 561 F.3d at 1096.

**B.      Dr. Stopp's Motion to Dismiss**

Dr. Stopp filed a motion to dismiss joining in the Medical Defendants' Motion to Dismiss. The Medical Defendants' Motion argued that Plaintiff failed to exhaust his administrative remedies and that Plaintiff failed to state a claim against Defendants Sara (lnu), Alicia (lnu), Dr. Bill (lnu), Dr. Travis (lnu), and Dr. Griffin. The Court rejected the arguments premised on Plaintiff's alleged failure to exhaust of administrative remedies. And, while the Medical Defendants generally identified the framework that the Court utilizes to analyze claims based on inadequate medical care, its arguments regarding dismissal addressed only the allegations—or lack thereof—against the Medical Defendants. The Motion did not address the allegations against Dr. Stopp—the only Defendant Plaintiff specifically identifies in his non-conclusory allegations of wrongdoing. Because neither Motion to Dismiss addresses the allegations levied against Dr. Stopp, Dr. Stopp's Motion to Dismiss is denied. Just as the Court will not make legal arguments for a pro se plaintiff, the Court will not make legal arguments for a represented defendant.

### IV.      Conclusion

Because Plaintiff has failed to state a claim for which relief may be granted against Defendants Sara (lnu), Alicia (lnu), Dr. Bill (lnu), Dr. Travis (lnu), and Dr. Griffin, the Court grants the Medical Defendants Motion to Dismiss. Dr. Stopp's Motion to Dismiss, however, merely incorporated the arguments presented by the Medical Defendants and did not address the allegations involving Dr. Stopp. As the Court has rejected the exhaustion of administrative remedies argument and has been presented no arguments specific to Dr. Stopp, the Court denies Dr. Stopp's Motion to Dismiss.

**IT IS THEREFORE ORDERED** that the Medical Defendants' Motion to Dismiss (Doc. 42) is **GRANTED**. Defendants Sara (lnu), Alicia (lnu), Dr. Bill (lnu), Dr. Travis (lnu), and Dr. Griffin are dismissed from this case.

**IT IS FURTHER ORDERED** that Defendant Harold Stopp, D.O.'s Motion to Dismiss (Doc. 44) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 7th day of November, 2018.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE